IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No. 1:18-cr-87 |
| Plaintiff, | : | |
| | : | |
| v. | : | Judge Susan J. Dlott |
| | : | |
| Nilesh Jobalia, | : | |
| | : | Order Denying Motion for |
| Defendant. | : | Compassionate Release |

This matter is before the Court on Defendant Nilesh Jobalia's Emergency Motion for Modification of Sentence ("Motion for Compassionate Release") (Doc. 92) and Supplemental Motion for Compassionate Release (Doc. 96), to which the Government responded in opposition (Doc. 98). For the reasons that follow, the Court will **DENY** Jobalia's Motion for Compassionate Release.

I. **BACKGROUND**

On June 21, 2018, Jobalia was charged in a 114-count Indictment. (Doc. 1.) On September 23, 2019, Jobalia pled guilty to one count of distributing controlled substances, in violation of 21 U.S.C. § 841(a)(1), as charged in Count 36; one count of health care fraud, in violation of 18 U.S.C. § 1347, as charged in Count 94; and one count of violating the Anti-Kickback Statute, in violation of 42 U.S.C. § 1320a-7b(b), as charged in Count 110. (Docs. 48, 50.) The parties entered into a plea agreement pursuant to Rule 11(c)(1)(C) and established an agreed sentencing range of 78 to 144 months of imprisonment. (Doc. 48 at PageID 469.) The parties' agreed sentencing range fell below the advisory sentencing range of 151 to 188 months of imprisonment. (Presentence Report ("PSR") at ¶ 167.)

Pursuant to the Statement of Facts to which he admitted, Jobalia was a licensed medical

1

doctor who issued prescriptions for Schedule II controlled substances, primarily oxycodone, fentanyl, morphine, and methadone, as well as Schedule III-IV controlled substances, to patients of Cincinnati Centers for Pain Relief ("CCPR") located in Hamilton, Ohio. (Doc. 52 at PageID 480.)

From March 1, 2013 through December 31, 2017, Jobalia illegally distributed controlled substances by issuing prescriptions outside the usual course of professional practice and not for a legitimate medical purpose. (*Id.*) Specifically, on November 7, 2014, Jobalia knowingly prescribed 120 dosage units of morphine 30 mg, and 60 dosage units of morphine ER 60 mg, both Schedule II controlled substances, and 90 dosage units of diazepam 10 mg, a Schedule IV controlled substance, to J.M. (*Id.*)

From January 3, 2012 through about December 31, 2017, Jobalia executed a scheme to defraud a health care benefit program by causing bills to be submitted to Medicare, Medicaid, Medicaid MCOs, and the Bureau of Worker's Compensation for medically unnecessary prescriptions for controlled substances and billing for moderate sedation when he did not perform a qualifying service. (*Id.*) Specifically, on July 29, 2014, CCPR submitted a claim in the amount of $75 to the Medicare program for moderate sedation provided to patient E.O. when Jobalia merely issued a prescription for Valium prior to the time when E.O. was scheduled for an injection, which did not meet the requirements to support billing. (*Id.* at PageID 480–81.) The Medicare program paid $30.48 for such procedure. (*Id.* at PageID 481.) If Medicare knew the service was not performed, the claim would have been denied. (*Id.*)

Jobalia also violated the Anti-Kickback Statute, which is intended to ensure referral decisions are made solely with the goal of a patient's well-being. (*Id.*) On March 23, 2013, Jobalia entered into a "Speaker Agreement" with Insys, a pharmaceutical company which

2

marketed a drug called Subsys, a sublingual fentanyl spray. (*Id.*) Jobalia received $1,600, and later $2,200, from Insys for each speaking engagement and ultimately received over $100,000 from Insys. (*Id.*) On October 15, 2014, Jobalia received $2,200 from Inys in exchange for a sham speaking event on September 23, 2014. (*Id.*) Jobalia made no formal presentation regarding the drug. (*Id.*) Instead, he solicited and received remuneration in return for arranging the purchase and order of Subsys, for which payment was made in whole or part by a federal health care program, namely, Medicare and/or Medicaid. (*Id.*) In total, Jobalia caused a loss to Medicare, Medicaid, and the Ohio Bureau of Workers' Compensation programs of more than $2,000,000 via health care fraud and through illegal kickbacks. (*Id.*)

The Presentence Report described that the investigation into Jobalia's criminal conduct was an extensive effort by the Ohio Board of Pharmacy, the Ohio Bureau of Worker's Compensation, the Medicaid Fraud Control Unit, and the Health and Human Services Office of the Inspector General. (PSR at ¶ 20.) According to case agents, a routine review of the Ohio Automated Prescription Reporting System indicated Jobalia was the number one prescriber of opiates in the State of Ohio. (*Id.*) The investigation revealed that patients received prescriptions for controlled substances without being seen in the office. (*Id.* at ¶ 36.) At times, the patients received cursory examinations with no vital signs being taken before being prescribed controlled substances. (*Id.*) Agents learned Jobalia was seeing more than 640 patients each month. (*Id.* at ¶ 38.)

On October 6, 2020, Jobalia was sentenced to 84 months of imprisonment on Count 36 and 120 months of imprisonment on Counts 94 and 110, to be served concurrently. A three-year period of supervised release and a $300 special assessment were also imposed. (Docs. 78, 79.) The Court postponed Jobalia's self-surrender date until June 1, 2021 due to the COVID-19

pandemic. (Doc. 89.) Jobalia is incarcerated at FMC Lexington and his projected release date is May 18, 2027. Federal BOP, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last viewed February 2, 2022).

On July 5, 2021, Jobalia requested compassionate release from the warden of his prison, which was denied on July 13, 2021. (Doc. 96-1 at PageID 885–86.) Jobalia then filed a pro se Motion for Compassionate Release on August 16, 2021. (Doc. 92.) He received court-appointed counsel, who filed a Supplemental Motion for Compassionate Release on November 12, 2021.[1] (Doc. 96.) The United States responded in opposition on November 29, 2021. (Doc. 98.) Jobalia asserts that his medical issues of cirrhosis of the liver, hypertension, and a history of smoking render him at great risk of severe illness from contracting COVID-19 while incarcerated, which merits his compassionate release. For the reasons that follow, Jobalia's Motion will be **DENIED.**

## II. STANDARD OF LAW

Jobalia seeks a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008). The compassionate release provisions in 18 U.S.C. § 3582(c)(1)(A) were "intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)). A defendant seeking a sentence reduction bears the burden of proof. *Id.* at 426; *United States v. Hill*, No.

---

[1] Jobalia filed an addendum supporting his motion for release (Doc. 95) as well as a letter complaining about the delay by his attorney in filing a supplement to his request for compassionate release (Doc. 97). Jobalia's attorney shortly thereafter filed a supplemental motion in support of Jobalia's request for compassionate release. There is no issue for the Court to address as the necessary motion has been filed.

4

5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020). Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Where, as here, a defendant has exhausted administrative remedies,[2] the district court must (1) determine whether "extraordinary and compelling reasons" warrant a reduction and (2) weigh the relevant sentencing factors listed in § 3553(a). *United States v. Jones*, 980 F.3d 1098, 1101, 1108 (6th Cir. 2020).[3] "Congress did not define what constitutes an 'extraordinary and compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting 28 U.S.C. § 994(t)) (alteration in original). Courts generally have

---

[2] The Government concedes Jobalia exhausted his administrative remedies. (Doc. 98 at PageID 930.)

[3] The Sixth Circuit determined in *Jones* that the only U.S. Sentencing Commission Policy Statement potentially applicable to motions for compassionate release—U.S.S.G. § 1B1.13—is inapplicable to cases filed by federal inmates. 980 F.3d at 1109, 1111. Therefore, the district court has full discretion to define "extraordinary and compelling reasons" without reference to the policy statement in § 1B1.13. *Id.* at 1111; *United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021).

5

discretion to define what constitutes "extraordinary and compelling" reasons. *Id.* at 562. Nonetheless, the Sixth Circuit recently defined two restrictions on that discretion:

> First, non-retroactive changes in the law, whether alone or in combination with other personal factors, are not "extraordinary and compelling reasons" for a sentence reduction. Second, facts that existed when the defendant was sentenced cannot later be construed as "extraordinary and compelling" justifications for a sentence reduction.

*Id.; United States v. McKinnie,* --- F.4th ---, 2022 WL 221539, at *3–4 (6th Cir. Jan. 26, 2022), *petition for rehearing en banc filed,* (6th Cir. Feb. 1, 2022) (citing *Hunter*).

The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553(a). These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). Also, district courts can consider non-retroactive changes in law relevant to sentencing as part of its weighing of the § 3553(a) sentencing factors. *See Hunter*, 12 F.4th at 564; *see also United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021). District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors. *Jones*, 980 F.3d at 1113.

### III. ANALYSIS

Jobalia argues that the risk of COVID-19 to him while incarcerated justifies his early release. COVID-19 is caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) and was recognized as a pandemic in March 2020. Jobalia asserts that his medical conditions of cirrhosis of the liver, hypertension, and complications from being a lifetime smoker place him

6

at high risk of serious illness from COVID-19. As discussed below, Jobalia's arguments are contrary to the prevailing law in this Circuit and do not provide an extraordinary and compelling reason for early release.

According to the Centers for Disease Control and Prevention ("CDC"), chronic lung disease, status as a current or former smoker, and heart conditions, including hypertension, are indeed conditions that can make adults "more likely to get severely ill from COVID-19." CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed Feb. 8, 2022). Since the pandemic began, three vaccines have been developed in the United States and have been recognized by the CDC as safe and effective at reducing the risk of severe illness from COVID-19 in adults. CDC, COVID-19, "Different COVID-19 Vaccines," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines.html (last viewed Feb. 8, 2022). The COVID-19 vaccine, as well as applicable booster shots, are now available to all staff and inmates at federal prisons. *See* FEDERAL BUREAU OF PRISONS, "COVID-19 Coronavirus," https://www.bop.gov/coronavirus/ (last accessed Feb. 10, 2022).

Because COVID-19 vaccinations are available to federal prisoners, the COVID-19 pandemic does not constitute an extraordinary and compelling reason for an inmate's release. *See, e.g., United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (a defendant does not present an extraordinary and compelling reason for sentence reduction on the basis of the risks of serious illness from COVID-19 where he has access to the COVID-19 vaccine); *United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021) (following *Lemons* and denying compassionate release to an inmate who was fully vaccinated); *McKinnie*, 2022 WL 221539, at *3–4 (following *Lemons*; affirming denial of compassionate release motion to a fully vaccinated inmate with

7

hypertension and obesity);[4] *United States v. Ho*, No. 1:17-cr-0057, 2021 WL 4440189, at *4 (S.D. Ohio Sept. 28, 2021), 2021 WL 4440189, at *4, *appeal filed* (6th Cir. Oct. 19, 2021) (denying compassionate release to fully vaccinated defendant).

The clear law in our Circuit forecloses Jobalia's early release on COVID-19 grounds. According to his medical records provided by the Government, Jobalia was administered the Moderna COVID-19 vaccine on April 1, 2021 and again on April 29, 2021, prior to his self-surrender on June 1, 2021. (Doc. 98-1 at PageID 945.) Even if he were not vaccinated, under the law in this Circuit, the availability of the COVID-19 vaccine and booster to him is enough to foreclose his motion. Furthermore, based on statistics provided by the Federal Bureau of Prisons, approximately 99% of the inmate population at FMC Lexington is fully vaccinated against COVID-19.[5] *See* FEDERAL BUREAU OF PRISONS, "COVID-19 Coronavirus," https://www.bop.gov/coronavirus/ (last accessed Feb. 10, 2022). Moreover, both Jobalia's medical conditions and the COVID-19 pandemic were contemplated at the time of sentencing, as the Court was aware of both circumstances at his October 2020 sentencing hearing. *See McKinnie*, 2022 WL 221539, at *3 ("[F]acts that existed at the time of sentencing do not constitute an extraordinary and compelling reason warranting a subsequent sentence reduction.").

---

[4] In *McKinnie*, the Sixth Circuit rejected the argument that a non-retroactive change in law, the defendant's obesity and hypertension, risk of complications from COVID-19 infection, conditions of incarceration, and good behavior while in prison rose to the level of an extraordinary and compelling reason for release. *Id.* at *3. The defendant's medical conditions were known at the time of sentencing and thus not "new" information or developments. *Id.* The same is true here. Jobalia filed his medical records with the Court and they were considered before his sentencing hearing. (*See* Doc. 76.)

[5] At FMC Lexington where Jobalia is incarcerated, 1,197 inmates have been vaccinated against COVID-19. *See* FEDERAL BUREAU OF PRISONS, "COVID-19 Coronavirus," https://www.bop.gov/coronavirus/ (last accessed Feb. 10, 2022). With an inmate population of 1,209, this is a vaccination rate of approximately 99% of the inmate population. *See* FEDERAL BUREAU OF PRISONS, "FMC Lexington," https://www.bop.gov/locations/institutions/lex/ (last accessed Feb. 10, 2022).

Consistent with clear law from this Circuit, Jobalia's motion for compassionate release due to the risk of COVID-19 to him will be denied.[6]

## IV. CONCLUSION

For the foregoing reasons, Jobalia's Motion for Compassionate Release (Doc. 92) is **DENIED**.

**IT IS SO ORDERED.**

BY THE COURT:

_____
Susan J. Dlott
United States District Judge

---

[6] The nature and circumstances of Jobalia's criminal conduct are very serious in this case, particularly during the opioid epidemic. However, because no extraordinary and compelling reason exists for his compassionate release, the Court will not address the 18 U.S.C. § 3553(a) sentencing factors. *See Elias*, 984 F.3d at 519 ("[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others."). Regardless, those factors were fully considered at the time of sentencing, and the Court's conclusions have not changed.