IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No. 1:18-cr-87 |
| Plaintiff, | : | |
| | : | |
| v. | : | Judge Susan J. Dlott |
| | : | |
| Nilesh Jobalia, | : | |
| | : | Order Denying Second Motion for |
| Defendant. | : | Compassionate Release |

This matter is before the Court on Defendant Nilesh Jobalia's Pro Se Motion for

Compassionate Release ("Motion for Compassionate Release") (Doc. 100), to which the

Government responded in opposition (Doc. 105) and Jobalia replied (Doc. 107).  For the reasons

that follow, the Court will **DENY** Jobalia's Motion for Compassionate Release.

## I.    BACKGROUND[1]

On June 21, 2018, Jobalia was charged in a 114-count Indictment.  (Doc. 1.)  On

September 23, 2019, Jobalia pled guilty to one count of distributing controlled substances, in

violation of 21 U.S.C. § 841(a)(1), as charged in Count 36; one count of health care fraud, in

violation of 18 U.S.C. § 1347, as charged in Count 94; and one count of violating the Anti-

Kickback Statute, in violation of 42 U.S.C. § 1320a-7b(b), as charged in Count 110.  (Docs. 48,

50.)  The parties entered into a plea agreement pursuant to Rule 11(c)(1)(C) and established an

agreed sentencing range of 78 to 144 months of imprisonment.  (Doc. 48 at PageID 469.)  The

parties' agreed sentencing range fell below the advisory sentencing range of 151 to 188 months

of imprisonment.  (Presentence Report ("PSR") at ¶ 167.)

Pursuant to the Statement of Facts to which he admitted, Jobalia was a licensed medical

---

[1] The Court denied Jobalia's first Motion for Compassionate Release on February 10, 2022.  (Doc. 99.)  The Court repeats much of the same background information here, as the facts are largely unchanged.  (*See id.*)

doctor who issued prescriptions for Schedule II controlled substances, primarily oxycodone, fentanyl, morphine, and methadone, as well as Schedule III-IV controlled substances, to patients of Cincinnati Centers for Pain Relief ("CCPR") located in Hamilton, Ohio.  (Doc. 52 at PageID 480.)

From March 1, 2013 through December 31, 2017, Jobalia illegally distributed controlled substances by issuing prescriptions outside the usual course of professional practice and not for a legitimate medical purpose.  (*Id*.)  Specifically, on November 7, 2014, Jobalia knowingly prescribed 120 dosage units of morphine 30 mg, and 60 dosage units of morphine ER 60 mg, both Schedule II controlled substances, and 90 dosage units of diazepam 10 mg, a Schedule IV controlled substance, to J.M.  (*Id*.)

From January 3, 2012 through about December 31, 2017, Jobalia executed a scheme to defraud a health care benefit program by causing bills to be submitted to Medicare, Medicaid, Medicaid MCOs, and the Bureau of Worker's Compensation for medically unnecessary prescriptions for controlled substances and billing for moderate sedation when he did not perform a qualifying service.  (*Id.*)  Specifically, on July 29, 2014, CCPR submitted a claim in the amount of $75 to the Medicare program for moderate sedation provided to patient E.O. when Jobalia merely issued a prescription for Valium prior to the time when E.O. was scheduled for an injection, which did not meet the requirements to support billing.  (*Id.* at PageID 480–81.)  The Medicare program paid $30.48 for such procedure.  (*Id*. at PageID 481.)  If Medicare knew the service was not performed, the claim would have been denied.  (*Id*.)

Jobalia also violated the Anti-Kickback Statute, which is intended to ensure referral decisions are made solely with the goal of a patient's well-being.  (*Id*.)  On March 23, 2013, Jobalia entered into a "Speaker Agreement" with Insys, a pharmaceutical company which

marketed a drug called Subsys, a sublingual fentanyl spray. (*Id*.) Jobalia received $1,600, and later $2,200, from Insys for each speaking engagement and ultimately received over $100,000 from Insys. (*Id*.) On October 15, 2014, Jobalia received $2,200 from Inys in exchange for a sham speaking event on September 23, 2014. (*Id*.) Jobalia made no formal presentation regarding the drug. (*Id*.) Instead, he solicited and received remuneration in return for arranging the purchase and order of Subsys, for which payment was made in whole or part by a federal health care program, namely, Medicare and/or Medicaid. (*Id*.) In total, Jobalia caused a loss to Medicare, Medicaid, and the Ohio Bureau of Workers' Compensation programs of more than $2,000,000 via health care fraud and through illegal kickbacks. (*Id*.)

The Presentence Report described that the investigation into Jobalia's criminal conduct was an extensive effort by the Ohio Board of Pharmacy, the Ohio Bureau of Worker's Compensation, the Medicaid Fraud Control Unit, and the Health and Human Services Office of the Inspector General. (PSR at ¶ 20.) According to case agents, a routine review of the Ohio Automated Prescription Reporting System indicated Jobalia was the number one prescriber of opiates in the State of Ohio. (*Id*.) The investigation revealed that patients received prescriptions for controlled substances without being seen in the office. (*Id*. at ¶ 36.) At times, the patients received cursory examinations with no vital signs being taken before being prescribed controlled substances. (*Id*.) Agents learned Jobalia was seeing more than 640 patients each month. (*Id*. at ¶ 38.) [2]

On October 6, 2020, Jobalia was sentenced to 84 months of imprisonment on Counts 36, 94, and 110, to be served concurrently with each other. A three-year period of supervised release and a $300 special assessment were also imposed. (Docs. 78, 79.) The Court postponed

---

[2] The Court issued an Order Correcting its Sentence Pursuant to Rule 35 on October 7, 2020 to clarify the correct sentence is 84 months of imprisonment on Counts 36, 94, and 110, to be served concurrently with each other, and the remainder of the oral sentence was to stand as imposed. (Doc. 79.)

Jobalia's self-surrender date until June 1, 2021 due to the COVID-19 pandemic.  (Doc. 89.)
Jobalia is incarcerated at FCI Terre Haute, and his projected release date is November 24, 2026.
Federal BOP, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last viewed Nov. 2, 2022).

On February 10, 2021, the Court denied Jobalia's first Motion for Compassionate
Release.  (Doc. 99.)   The Court rejected Jobalia's argument that the risk of serious illness due to
COVID-19 and his medical conditions (cirrhosis of the liver, hypertension, and complications
from being a lifetime smoker) were an extraordinary and compelling reason for his early release.
Relying upon *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021), the Court held that
"[b]ecause COVID-19 vaccinations are available to federal prisoners, the COVID-19 pandemic
does not constitute an extraordinary and compelling reason for an inmate's release."  (Doc. 99 at
PageID 954.)

Six months after the Court's decision, Jobalia filed his currently pending second Motion
for Compassionate Release. (Doc. 100.)  Now he argues that his medical conditions have gotten
worse and the vaccine is ineffective against strains of COVID.  (*Id*. at 957.)  On September 23,
2022, the Government filed a Response in Opposition (Doc. 105), and on October 12, 2022,
Jobalia filed a Reply (Doc. 107).  For the reasons that follow, Jobalia's second Motion for
Compassionate Release will be **DENIED**.

## II.    STANDARD OF LAW

Jobalia again seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The
Court lacks authority to resentence a defendant, except as permitted by statute.  *United States v.
Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008).  The compassionate release provisions in 18
U.S.C. § 3582(c)(1)(A) were "intended to be a 'safety valve' to reduce a sentence in the 'unusual
case in which the defendant's circumstances are so changed, such as by terminal illness, that it

would be inequitable to continue the confinement of the prisoner.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)).  A defendant seeking a sentence reduction bears the burden of proof.  *Id*. at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020).  Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

After enactment of the First Step Act of 2019, the text of 18 U.S.C. § 3582(c)(1)(A) now makes clear that a defendant can bring a compassionate release motion on his or her own behalf after the defendant either fully exhausts any administrative remedies or waits 30 days from the date his or her warden receives his or her request for release.  *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020).  Exhaustion of administrative remedies is a mandatory claim-processing rule.  *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020).  As such, the rule only binds the Court if properly asserted and not forfeited.  *Id*. at 833.  This claim-processing

rule "serves important purposes" including that "prison administrators can prioritize the most urgent claims" and "investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist." *Id.* at 835.

If a defendant has exhausted administrative remedies,[3] the district court must then (1) determine whether "extraordinary and compelling reasons" warrant a reduction and (2) weigh the relevant sentencing factors listed in § 3553(a). *United States v. Jones*, 980 F.3d 1098, 1101, 1108–09 (6th Cir. 2020).[4] "Congress did not define what constitutes an 'extraordinary and compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021), *cert. denied,* 142 S. Ct. 2771 (2022) (quoting 28 U.S.C. § 994(t)) (alteration in original). Courts generally have discretion to define what constitutes "extraordinary and compelling" reasons. *Id*. at 562. Nonetheless, the Sixth Circuit defined two restrictions on that discretion:

> First, non-retroactive changes in the law, whether alone or in combination with other personal factors, are not "extraordinary and compelling reasons" for a sentence reduction. Second, facts that existed when the defendant was sentenced cannot later be construed as "extraordinary and compelling" justifications for a sentence reduction.

---

[3] There is no dispute Jobalia exhausted his administrative remedies prior to filing his second Motion for Compassionate Release. According to documents he submitted to the Court, Jobalia requested compassionate release through an Inmate Request to Staff form on May 2, 2022. (Doc. 100 at PageID 968.) Jobalia received an Inmate Request to Staff Member Response signed by "T. Rule, Warden" on June 13, 2022 denying that request. (*Id*. at PageID 967.) He filed his second Motion for Compassionate Release more than thirty days later, on August 12, 2022. (Doc. 100.)

[4] The Sixth Circuit determined in *Jones* that the only U.S. Sentencing Commission Policy Statement potentially applicable to motions for compassionate release—U.S.S.G. § 1B1.13—is inapplicable to cases filed by federal inmates. 980 F.3d at 1109, 1111. Therefore, the district court has full discretion to define "extraordinary and compelling reasons" without reference to the policy statement in § 1B1.13. *Id*. at 1111; *United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021).

*Id*.; *United States v. McKinnie*, 24 F.4th 583, 586–90 (6th Cir. Jan. 26, 2022) (citing *Hunter*).[5] The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553(a). These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). Also, district courts can consider non-retroactive changes in law relevant to sentencing as part of their weighing the § 3553(a) sentencing factors. *See Hunter*, 12 F.4th at 564; *United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021). District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors. *Jones*, 980 F.3d at 1113.

## III.    ANALYSIS

### A.  No Extraordinary and Compelling Reason for Release

Jobalia argues that the risk to him from COVID-19 has increased since his first Motion for Compassionate Release was before the Court. He contends that his health, and in particular his liver disease, has worsened during his incarceration. He asserts he has additional conditions of anxiety, depression, and physical inactivity that increase his risk of severe illness from COVID-19. In addition, he contends the COVID-19 vaccine is ineffective and presents risks of adverse effects.

---

[5] *But see United States v. Owens*, 996 F.3d 755, 763–64 (6th Cir. 2021); *United States v. McCall*, 20 F.4th 1108, 1116 (6th Cir. 2021), *rehearing en banc granted, vacated*, No. 21-3400, 29 F.4th 816 (6th Cir. April 1, 2022).

Jobalia debates the efficacy of vaccines and booster shots in his recent motion, but it is no matter.  As noted, the Court previously held when denying Jobalia's first Motion for Compassionate Release that "[b]ecause COVID-19 vaccinations are available to federal prisoners, the COVID-19 pandemic does not constitute an extraordinary and compelling reason for an inmate's release."  (Doc. 99 at PageID 954.)  The Court further held that "clear law in our Circuit forecloses Jobalia's early release on COVID-19 grounds[,]" citing Jobalia having been administered the Moderna COVID-19 vaccine on April 1, 2021 and again on April 29, 2021, prior to his self-surrender on June 1, 2021.[6]  (*Id.* at PageID 955.)  The Court also noted that Jobalia's medical conditions and the COVID-19 pandemic were contemplated at the time of his October 2020 sentencing hearing.  (*Id.*)

The Court declines the invitation to stray from established Sixth Circuit law, which holds that "[a] defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction."  *Lemons*, 15 F.4th at 751 (citation omitted); *see also United States v. Inman*, No. 3:20-cv-00154, 2022 WL 304660, at *4 (M.D. Tenn. Feb. 1, 2022) ("[G]iven the wide availability of the COVID-19 vaccine, *Lemons* forecloses a substantial portion of inmates' arguments that their underlying health conditions combined with the COVID-19 pandemic constitute extraordinary and compelling reasons for release.").  These cases pragmatically address the reality that some exposure to the COVID-19 virus is inherent in everyday living, both inside and outside of prison, and thus no longer a reason for compassionate release when a defendant has access to the COVID-19 vaccine, as the Court has already held is the case here.

---

[6] Based on medical records provided by the Government, Jobalia was offered a booster shot on June 8, 2021, but declined.  (Doc. 105-1 at PageID 1097.)

Further, statistics reported by the Bureau of Prisons ("BOP") establish that COVID-19 cases appear well managed at FCI Terre Haute, where Jobalia is now imprisoned. As of November 2, 2022, FCI Terre Haute reported one inmate positive with COVID-19 and no staff members positive with COVID-19. Federal Bureau of Prisons, "COVID-19 Coronavirus," https://www.bop.gov/coronavirus/ (last accessed 11/2/2022). The BOP reports the facility has had 4 inmate deaths and no staff deaths from COVID-19, as well as 305 inmates and 274 staff recovered from COVID-19. (*Id.*) Thus, based on these statistics, COVID-19 infections appear to be limited in Jobalia's prison at present.[7]

Regardless, Jobalia's alleged conditions—hypertension, liver disease, liver cirrhosis, a history of smoking, anxiety, depression, and physical inactivity—do not rise to the rare and extraordinary level sufficient to warrant compassionate release. *Compare United States v. Maxwell*, 567 F. Supp. 3d 824, 831–32 (S.D. Ohio 2021) (finding extraordinary and compelling reason where defendant suffered two "life-altering medical events" that left him unable to care for himself); *and United States v. Smith*, No. 15-cr-119 (S.D. Ohio Nov. 10, 2020) (Doc. 327) (finding extraordinary and compelling reason where defendant suffered from a long list of severe medical conditions, some of which were non-recoverable and rendered defendant non-ambulatory); *with United States v. Jenkins-Mills*, No. 3:17-CR-00025-TMKR-MRM-2, 2020 WL 6146418, at *4 (S.D. Ohio Oct. 20, 2020) (finding no extraordinary and compelling reason for compassionate release of 30-year-old defendant with medical conditions of obesity and hypertension). Jobalia's asserted medical conditions simply do not rise to the same rare and extraordinary level as other instances of more severe and extreme medical circumstances which merited compassionate release during the height of the COVID-19 pandemic.

---

[7] Jobalia speculates the data underreports infections and should not be trusted. As this is the best statistical data regarding COVID-19 in federal prisons available to the Court, it routinely relies upon it in assessing COVID-19 infection rates in BOP facilities.

Jobalia fails to establish an extraordinary and compelling reason for his early release. His conditions are not particularly serious, he has received two doses of the Moderna COVID-19 vaccine and been offered a booster shot, and COVID-19 appears well-managed at his prison. In addition, unlike many defendants who seek compassionate release on COVID-19 grounds, the Court fully contemplated the effect of the pandemic on Jobalia and his health conditions at the time of sentencing. Thus, the effect of the COVID-19 pandemic is not a new factor for the Court to consider. *See Hunter*, 12 F.4th at 569 ("Section 3582(c)(1)(A) precludes a court from simply taking facts that existed at sentencing and repackaging them as "extraordinary and compelling.") These are not extraordinary and compelling reasons for his early release.

## B. Sentencing Factors Do Not Support Jobalia's Early Release

Even if the Court found an extraordinary and compelling reason for release, which it does not, the 18 U.S.C. § 3553(a) sentencing factors do not support Jobalia's early release. The Court evaluated the § 3553(a) sentencing factors at Jobalia's sentencing hearing, and its conclusions have not changed.

To highlight a few of the important factors the Court considered at the sentencing hearing, the nature and circumstances of Jobalia's offense are incredibly serious. The far-reaching impact of Jobalia's conduct cannot be understated: he was the number one prescriber of opiates in the state of Ohio. (PSR, ¶ 20.) Jobalia was seeing more than 640 patients each month and was the most concerning physician in the State of Ohio with respect to his prescribing practices. (*Id*. at ¶ 38.) From March 1, 2013 to December 31, 2017, he wrote prescriptions for an astounding 67,388 Schedule II controlled substances, resulting in the distribution of more than 7,261,779 pills. (*Id*. at ¶ 44.) Jobalia's patients received prescriptions for controlled substances from him without being seen in the office. (*Id*. at ¶ 36.) Other times, his patients received only

cursory examinations with no vital signs being taken before he prescribed controlled substances. (*Id.*) His prescribing practices were not for a legitimate medical purpose and fell outside the scope of the usual course of professional medical practice. This is a serious concern for drug abuse, addiction, diversion, and overdose deaths.

Jobalia's illegal prescribing practices also led him to defrauding Medicaid, Medicare, and the Bureau of Worker's Compensation. He also participated in a kickback scheme with Insys, the manufacturer of Subsys, a powerful fentanyl transmucosal spray. In all, his criminal conduct caused a loss of $2,186,498.44 to health care benefit programs.

Jobalia's sentence was calculated with the goal of reflecting the seriousness of his offense: his significant contribution to the opioid epidemic in the state of Ohio. As the top prescriber of opioids in Ohio, it is imperative that the sentence Jobalia received act as a deterrent to other doctors in a position of trust who prescribe similar drugs.

Unlike many of the other defendants this Court sentences, Jobalia was raised in a loving household with supportive parents. He did not experience abuse in his formative years. At the time of his sentencing, the Court considered Jobalia's background, as well as his struggle with alcoholism, anxiety, and depression.

The Court considered its sentence of 84 months of imprisonment to be the best sentence that reflects the seriousness of his offense, will adequately deter others from committing similar offenses, and will protect the public from future criminal behavior by Jobalia. The sentence, already below the guideline range, avoids unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. To now reduce that sentence even further would undermine the important goals of the originally imposed sentence.

The conduct to which Jobalia admitted is incredibly serious.  He prescribed opioids at an alarming rate to become the number one opioid prescriber in Ohio, contributing to the plague of drug addition and abuse in the Southern District of Ohio and beyond.  The Court considered the § 3553(a) sentencing factors at the time of sentencing and determined 84 months of imprisonment is the appropriate sentence in this case.  (See Docs. 78, 79.)  The Court's conclusions have not changed: Jobalia needs to serve his justified sentence to completion.

## IV.     CONCLUSION

For the foregoing reasons, Jobalia's second Motion for Compassionate Release (Doc. 100) is **DENIED**.

**IT IS SO ORDERED**.

BY THE COURT:


S/Susan J. Dlott
Susan J. Dlott
United States District Judge

12