IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| United States of America, | : | |
|---|---|---|
| | : | Case No. 1:18-cr-87 |
| Plaintiff, | : | |
| | : | |
| v. | : | Judge Susan J. Dlott |
| | : | |
| Nilesh Jobalia, | : | |
| | : | Order Denying Third Motion for |
| Defendant. | : | Compassionate Release |

This matter is before the Court on Defendant Nilesh Jobalia's Third Pro Se Motion for Compassionate Release ("Third Motion for Compassionate Release") (Doc. 115), to which the Government responded in opposition (Doc. 118).[1] For the reasons that follow, the Court will **DENY** Jobalia's Third Motion for Compassionate Release.

I. BACKGROUND

A. Facts

The Court denied Jobalia's First Motion for Compassionate Release on February 10, 2022 and his Second Motion for Compassionate Release on November 8, 2022. (Docs. 99, 108.) The Sixth Circuit Court of Appeals affirmed the Court's denial of Jobalia's Second Motion for Compassionate Release on August 24, 2023. *United States v. Jobalia*, No. 22-4105, 2023 WL 8613528 (6th Cir. Aug. 23, 2023) (Doc. 111).

The Court repeats its prior factual recitation here, as the facts are unchanged. (*See* Docs. 99 and 108.) On June 21, 2018, Jobalia was charged in a 114-count Indictment. (Doc. 1.) On September 23, 2019, Jobalia pled guilty to one count of distributing controlled substances, in

---

[1] Jobalia also filed a pro se letter motion asking the Court to grant his Third Motion for Compassionate Release. (Doc. 119.) In this filing, Jobalia complained that the Government not yet responded to his Third Motion for Compassionate Release. As the Government has now filed its response and this Order addresses his Third Motion for Compassionate Release, his pro se letter motion is **DENIED AS MOOT**. (Doc. 119.)

1

violation of 21 U.S.C. § 841(a)(1), as charged in Count 36; one count of health care fraud, in violation of 18 U.S.C. § 1347, as charged in Count 94; and one count of violating the Anti-Kickback Statute, in violation of 42 U.S.C. § 1320a-7b(b), as charged in Count 110. (Docs. 48, 50.) The parties entered into a Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and established an agreed sentencing range of 78 to 144 months of imprisonment. (Doc. 48 at PageID 469.) The parties' agreed sentencing range fell below the advisory sentencing range of 151 to 188 months of imprisonment. (Presentence Report ("PSR") at ¶ 167.)

Pursuant to the Statement of Facts to which he admitted, Jobalia was a licensed medical doctor who issued prescriptions for Schedule II controlled substances, primarily oxycodone, fentanyl, morphine, and methadone, as well as Schedule III–IV controlled substances, to patients of Cincinnati Centers for Pain Relief ("CCPR") located in Hamilton, Ohio. (Doc. 52 at PageID 480.)

From March 1, 2013 through December 31, 2017, Jobalia illegally distributed controlled substances by issuing prescriptions outside the usual course of professional practice and not for a legitimate medical purpose. (*Id*.) Specifically, on November 7, 2014, Jobalia knowingly prescribed 120 dosage units of morphine 30 mg, and 60 dosage units of morphine ER 60 mg, both Schedule II controlled substances, and 90 dosage units of diazepam 10 mg, a Schedule IV controlled substance, to J.M. (*Id*.)

From January 3, 2012 through about December 31, 2017, Jobalia executed a scheme to defraud a health care benefit program by causing bills to be submitted to Medicare, Medicaid, Medicaid MCOs, and the Bureau of Worker's Compensation for medically unnecessary prescriptions for controlled substances and billing for moderate sedation when he did not

2

perform a qualifying service. (*Id.*) Specifically, on July 29, 2014, CCPR submitted a claim in the amount of $75 to the Medicare program for moderate sedation provided to patient E.O. when Jobalia merely issued a prescription for Valium prior to the time when E.O. was scheduled for an injection, which did not meet the requirements to support billing. (*Id.* at PageID 480–81.) The Medicare program paid $30.48 for such procedure. (*Id.* at PageID 481.) If Medicare knew the service was not performed, the claim would have been denied. (*Id.*)

Jobalia also violated the Anti-Kickback Statute, which is intended to ensure referral decisions are made solely with the goal of a patient's well-being. (*Id.*) On March 23, 2013, Jobalia entered into a "Speaker Agreement" with Insys, a pharmaceutical company which marketed a drug called Subsys, a sublingual fentanyl spray. (*Id.*) Jobalia received $1,600, and later $2,200, from Insys for each speaking engagement and ultimately received over $100,000 from Insys. (*Id.*) On October 15, 2014, Jobalia received $2,200 from Inys in exchange for a sham speaking event on September 23, 2014. (*Id.*) Jobalia made no formal presentation regarding the drug. (*Id.*) Instead, he solicited and received remuneration in return for arranging the purchase and order of Subsys, for which payment was made in whole or part by a federal health care program, namely, Medicare and/or Medicaid. (*Id.*) In total, Jobalia caused a loss to Medicare, Medicaid, and the Ohio Bureau of Workers' Compensation programs of more than $2,000,000 via health care fraud and through illegal kickbacks. (*Id.*)

The Presentence Report described that the investigation into Jobalia's criminal conduct was an extensive effort by the Ohio Board of Pharmacy, the Ohio Bureau of Worker's Compensation, the Medicaid Fraud Control Unit, and the Health and Human Services Office of the Inspector General. (PSR at ¶ 20.) According to case agents, a routine review of the Ohio Automated Prescription Reporting System indicated Jobalia was the number one prescriber of

opiates in the State of Ohio. (*Id*.) The investigation revealed that patients received prescriptions for controlled substances without being seen in the office. (*Id*. at ¶ 36.) At times, the patients received cursory examinations with no vital signs being taken before being prescribed controlled substances. (*Id*.) Agents learned Jobalia was seeing more than 640 patients each month. (*Id*. at ¶ 38.)

### B. Procedural History

On October 6, 2020, Jobalia was sentenced to 84 months of imprisonment on Counts 36, 94, and 110, to be served concurrently with each other.[2] A three-year period of supervised release and a $300 special assessment were also imposed. (Docs. 78, 79.) The Court postponed Jobalia's self-surrender date until June 1, 2021 due to the COVI[3]D-19 pandemic. (Doc. 89.) Jobalia is incarcerated at Chicago MCC, and his projected release date is May 18, 2026. Federal BOP, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last viewed August 21, 2024).

On February 10, 2022, the Court denied Jobalia's First Motion for Compassionate Release. (Doc. 99.) The Court rejected Jobalia's argument that the risk of serious illness due to COVID-19 and his medical conditions (cirrhosis of the liver, hypertension, and complications from being a lifetime smoker) were an extraordinary and compelling reason for his early release. Six months after the Court's decision, Jobalia filed a Second Motion for Compassionate Release arguing that that compassionate release was warranted due to:

> (1) his progressively worsening medical circumstances caused by various ailments, including liver disease and cirrhosis, hypertension, a history of smoking, depression, and anxiety, (2) the risks posed by COVID-19, particularly because his medical circumstances render the COVID-19 vaccine ineffective, (3) his institution's failure to serve him a proper diet, maintain

---

[2] The Court issued an Order Correcting its Sentence Pursuant to Rule 35 on October 7, 2020 to clarify the correct sentence is 84 months of imprisonment on Counts 36, 94, and 110, to be served concurrently with each other, and the remainder of the oral sentence was to stand as imposed. (Doc. 79.)

[3] The Court issued an Order Correcting its Sentence Pursuant to Rule 35 on October 7, 2020 to clarify the correct sentence is 84 months of imprisonment on Counts 36, 94, and 110, to be served concurrently with each other, and the remainder of the oral sentence was to stand as imposed. (Doc. 79.)

> adequate safety measures, and provide adequate medical care, and (4) his rehabilitation efforts, good behavior while in prison and on release prior to surrendering for his sentence, and lack of danger to the community.

2023 WL 8613528, at *1 (6th Cir. Aug. 23, 2023).  On November 8, 2022, the Court denied his Second Motion for Compassionate Release, finding that he did not establish an extraordinary and compelling reason for release and that the 18 U.S.C. § 3553(a) sentencing factors weighed against his release.  *Id*.  On August 23, 2023, the Sixth Circuit Court of Appeals affirmed the decision that the sentencing factors weigh against release and determined it need not evaluate the Court's determination that he failed to establish an extraordinary and compelling reason for release.  *Id*. at *1–2.  Specifically, the Sixth Circuit stated:

> In addressing Jobalia's motion, the district court recognized that he suffers from various medical conditions, but the court also accurately noted that (1) Jobalia's crimes were extremely serious, as he improperly prescribed a tremendous amount of controlled substances and defrauded healthcare benefit programs out of more than two million dollars, (2) he did not have a difficult or abusive upbringing, and (3) his 84-month sentence was below the sentencing range called for by the guidelines.  Based on those considerations, the district court reasonably concluded that factors such as the seriousness of Jobalia's offenses, his history and characteristics, and the need to protect the public, afford adequate deterrence, and provide just punishment outweighed the other pertinent sentencing factors and counseled against compassionate release.

*Id*. at *1. On April 22, 2024, Jobalia filed his Third Motion for Compassionate Release, which the Government opposes.  (Docs. 115, 118.)

**II.     STANDARD OF LAW**

Once again, Jobalia seeks a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2). The Court lacks authority to resentence a defendant, except as permitted by statute.  *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008).  Section 3582(c)(2) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—

5

\* \* \*

> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2). Under U.S.S.G. § 1B1.13(b)(1)(C), extraordinary and compelling reasons exist if the defendant "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."

The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553(a). These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). Also, district courts can consider non-retroactive changes in law relevant to sentencing as part of their weighing the § 3553(a) sentencing factors. *See United States v. Hunter*, 12 F. 4th 555, 564 (6th Cir. 2021); *United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021). District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors. *United States v. Jones*, 980 F.3d 1098, 1113 (6th Cir. 2020).

III.    ANALYSIS

    A.  **No Extraordinary and Compelling Reason for Release**

Jobalia argues that his medical conditions, perceived issues with medical treatment and evaluation in prison, rehabilitation, parental support upon release, and the fact that he has served a significant portion of his sentence establish an extraordinary and compelling reason for early release. The Court disagrees and will address each argument in turn.

Jobalia asserts liver cirrhosis, grade 1 esophageal varices, blood in urine, enlarged high left gastrohepatic lymph node, and back and leg pain are medical conditions that justify his early release. Under U.S.S.G. § 1B1.13, the Court has the discretion to reduce a term of imprisonment to the extent it determines that an extraordinary and compelling reason exists due to the medical circumstances of a defendant. U.S.S.G. § 1B1.13(b)(1)(C) includes the circumstance of when a "defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." None of Jobalia's conditions, alone or in combination, rise to the level of an extraordinary and compelling reason for release.

The Government pointed out that Jobalia's medical records demonstrate that all of his conditions are being managed in prison. Jobalia's liver cirrhosis has been well-documented from the time of sentencing and has been raised in all three of his Motions for Compassionate Release. He claims that his liver condition has worsened, although the degree of progression is "not known." (Doc. 115 at PageID 1642.) His medical records indicate he is being prescribed two medications to treat his liver cirrhosis. (Doc. 118-2 at PageID 2105.) The Court previously found that Jobalia's liver cirrhosis was not an extraordinary and compelling reason for his release. (Doc. 108 at PageID 1621 ("Jobalia's alleged conditions—hypertension, liver disease,

7

liver cirrhosis, a history of smoking, anxiety, depression, and physical inactivity—do not rise to the rare and extraordinary level sufficient to warrant compassionate release.")) Nothing about the progression of this condition changes the Court's conclusion as he continues to receive medical care and treatment for it in prison.

Jobalia's other medical conditions are before the Court for the first time, but they, too, are being managed in prison. He has esophageal varices that he posits without treatment may result in bleeding which may cause illness.[4] Jobalia is being actively treated for this condition, and he is taking several medications to treat the varices. (Doc. 118-2 at PageID 2105.) Jobalia was found to have blood in his urine; however, he was seen by a urologist on March 7, 2024 and a medical note indicates a consult for cystoscopy was placed. (Doc. 115 at PageID 1642.) Thus, he is being treated for this condition, though the cause is still undetermined.[5] Jobalia also complains of an enlarged high left gastrohepatic lymph node. Again, he is being treated for this condition, and the nurse practitioner who saw him on March 19, 2024 recommended that he undergo a PET/CT for his lymph node. (Doc. 118-2 at PageID 2100.) Lastly, Jobalia complains of back and leg pain, for which he is receiving treatment. (*Id*. at PageID 2092, 2227.) In sum, Jobalia's conditions—cirrhosis of the liver, esophageal varices, blood in his urine, gastrohepatic lymph node, and back and leg pain—do not rise to the rare and extraordinary level sufficient to warrant compassionate release. They are actively being treated and managed by his facility.[6]

Jobalia also argues that his rehabilitation, release plan and family support, and the fact that he has served a significant portion of his sentence support his early release. While Jobalia's rehabilitation efforts are commendable, without more, it is not a basis for compassionate release.

---

[4] However, this outcome is speculative.

[5] Jobalia is concerned he has cancer, but there is no cancer diagnosis in the record.

[6] The Court notes that Jobalia complains about the timeliness and extent of his medical treatment. As the record demonstrates he is actively being treated for all conditions, the Court is not receptive to this argument.

28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.") That Jobalia has family support, a proposed release plan, and has served a portion of his sentence to date are also not bases for his release, alone or in combination.

### B. Sentencing Factors Do Not Support Jobalia's Early Release

Even if the Court found an extraordinary and compelling reason for release, which it does not, the 18 U.S.C. § 3553(a) sentencing factors do not support Jobalia's early release just as they did not when the Court denied Jobalia's Second Motion for Compassionate Release in 2022. Affirming the Court's denial of Jobalia's Second Motion for Compassionate Release, the Sixth Circuit noted that the Court "recognized that he suffers from various medical conditions, but the court also accurately noted that (1) Jobalia's crimes were extremely serious, as he improperly prescribed a tremendous amount of controlled substances and defrauded healthcare benefit programs out of more than two million dollars, (2) he did not have a difficult or abusive upbringing, and (3) his 84-month sentence was below the sentencing range called for by the guidelines." 2023 WL 8613528, at *1. The same is true today.

The same critical facts continue to weigh strongly against compassionate release. Jobalia's crimes remain extremely serious and should not be understated: he was the number one prescriber of opiates in the state of Ohio. (PSR at ¶ 20.) Jobalia was seeing more than 640 patients each month and was the most concerning physician in the State of Ohio with respect to his prescribing practices. (*Id*. at ¶ 38.) From March 1, 2013 to December 31, 2017, he wrote prescriptions for an astounding 67,388 Schedule II controlled substances, resulting in the distribution of more than 7,261,779 pills. (*Id*. at ¶ 44.) Jobalia's patients received prescriptions for controlled substances from him without being seen in the office. (*Id*. at ¶ 36.) Other times,

9

his patients received only cursory examinations with no vital signs being taken before he prescribed controlled substances. (*Id*.) His prescribing practices were not for a legitimate medical purpose and fell outside the scope of the usual course of professional medical practice. His practices created a serious risk of patient drug abuse, addiction, diversion, and overdose deaths.

Jobalia's illegal prescribing practices also led him to defrauding Medicaid, Medicare, and the Bureau of Worker's Compensation. He also participated in a kickback scheme with Insys, the manufacturer of Subsys. In all, his criminal conduct caused a loss of $2,186,498.44 to health care benefit programs.

Jobalia's sentence was calculated with the goal of reflecting the seriousness of his offense: his significant contribution to the opioid epidemic in the state of Ohio. This remains a significant priority. As the top prescriber of opioids in Ohio, it is imperative that Jobalia's sentence is a deterrent to other doctors in a position of trust who prescribe similar drugs. Upholding his sentence acts as a deterrent to similarly-situated doctors and professionals.

As the Sixth Circuit recognized, the Court considered that Jobalia was raised in a loving family environment without abuse. He has struggled with alcoholism, anxiety, and depression. At the time of sentencing, and still today, Jobalia's sentence of 84 months of imprisonment is the best sentence that reflects the seriousness of his offense, will adequately deter others from committing similar offenses, and will protect the public from future criminal behavior by Jobalia. His sentence is below his guideline range, and it avoids unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. To now reduce that sentence even further would undermine the important goals of the originally imposed sentence.

Jobalia suffers from some medical ailments.  The Court has no doubt his conditions are worsening in prison and as he ages.  However, his conditions are being treated in prison.  Jobalia has not established an extraordinary and compelling reason for release.  Even if he could, "the Court's conclusions have not changed: Jobalia needs to serve his justified sentence to completion."  (Doc. 108 at PageID 1624.)  His 84-month sentence stands.

## IV. CONCLUSION

For the foregoing reasons, Jobalia's Third Motion for Compassionate Release (Doc. 115) is **DENIED**.

**IT IS SO ORDERED**.

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge